**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| NEUTRAL TANDEM, INC., | |
| Plaintiff, | 08 CV 3402 |
| v. | Judge Marvin Aspen |
| PEERLESS NETWORK, LLC, PEERLESS NETWORK of ILLINOIS, LLC, and JOHN BARNICLE, | Magistrate Judge Maria Valdez |
| Defendants. | |
| PEERLESS NETWORK, LLC, PEERLESS NETWORK of ILLINOIS, LLC, and JOHN BARNICLE, | |
| Counterclaim Plaintiffs, | |
| v. | |
| NEUTRAL TANDEM, INC. | |
| Counterclaim Defendant | |

**DEFENDANTS PEERLESS NETWORK, LLC, PEERLESS NETWORK OF ILLINOIS, LLC, AND JOHN BARNICLE'S ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS**

Defendants Peerless Network, LLC ("Peerless"), Peerless Network of Illinois, LLC ("Peerless Illinois"), and John Barnicle ("Barnicle"), by its attorneys, Kelley Drye & Warren LLP, states as follows for their answer, affirmative defenses, and counterclaims. Peerless, Peerless Illinois, and Barnicle are hereinafter referred to as "Defendants." Unless otherwise

1

specified, Peerless and Peerless Illinois are referred to herein as "Peerless Network."

## NATURE OF THE ACTION

1.      This action relates to Neutral Tandem's U.S. Patent No. 7,123,708 B1 directed to a neutral tandem telecommunications network providing transiting, terminating, and advanced traffic routing services to public and private carrier networks.

**ANSWER:    Defendants admit that this matter is purportedly an action that relates to U.S. Patent No. 7,123,708 B1 (the '708 Patent).  The remaining allegations of Paragraph 1 seek to characterize the '708 Patent.  Defendants deny that the characterizations are complete or accurate, and respectfully refer the Court to the terms of the '708 Patent and the '708 Patent prosecution history to give full effect to its terms. Defendants therefore deny the remaining allegations of Paragraph 1.**

## PARTIES AND JURISDICTION

2.      Plaintiff Neutral Tandem is a Delaware corporation having its principal place of business at One South Wacker Drive, Suite 200, Chicago, Illinois 60606.

**ANSWER:  Upon information and belief, Defendants admit the allegations of Paragraph 2.**

3.      Upon information and belief, Defendant Peerless is a limited liability company organized under the laws of the state of Delaware having its principal place of business at 645 N. Kingsbury, Suite 1302, Chicago, Illinois 60610.  Upon information and belief, Peerless operates its business through wholly-owned subsidiaries in at least seventeen states.

**ANSWER:  Defendant Peerless Network, LLC is a limited liability company organized under the laws of the State of Delaware.  Defendants deny the remaining allegations of Paragraph 3.**

4.    Upon information and belief Peerless operates its business in Illinois through Defendant Peerless Illinois, which has its principal place of business at 645 N. Kingsbury, Suite 1302, Chicago, Illinois 60610.  Peerless and Peerless Illinois are conducting the acts of infringement complained of within this judicial district.

**ANSWER:  Defendant Peerless Network of Illinois, LLC is a limited liability company with its principal place of business at 225 W. Washington Street, Suite 1285, Chicago, Illinois 60606.  Defendants deny the remaining allegations of Paragraph 4.**

5.    Upon information and belief, Defendant Barnicle is a resident of Cook County, Illinois and is currently the Chief Executive Officer and Managing Member of Peerless and Peerless Illinois. Barnicle is conducting the acts of infringement complained of within this judicial district.

**ANSWER:  Defendants admit that Defendant John Barnicle is a resident of Cook County, Illinois and is Chief Executive Officer of Peerless Network, LLC. Defendants deny the remaining allegations of Paragraph 5.**

6.    Defendant Barnicle was the president and chief operating officer of Neutral Tandem and was employed at Neutral Tandem from approximately February 2003 through approximately October 2005.

**ANSWER:  Defendant John Barnicle admits the allegations of Paragraph 6.**

7.    This patent infringement action arises under the patent laws of the United States, Title 35, United States Code.  This Court has jurisdiction over the subject matter of this case under 28 U.S.C. §§ 1331 and 1338(a).

**ANSWER:  Defendants admit that the Court has jurisdiction over this purported patent infringement action.  Defendants deny the remaining allegations of Paragraph 7.**

3

8.     This Court has personal jurisdiction over the Defendants based on the above allegations.

**ANSWER:  Defendants admit that the Court has personal jurisdiction in this matter.**

9.     Venue properly lies in this judicial district under 28 U.S.C. §§ 1391(b) and (c) and 1400(b).

**ANSWER:  Defendants admit that venue is proper before this Court.**

**THE PATENT IN SUIT**

10.     Neutral Tandem is owner of the entire interest in and to U.S. Patent No. 7,123,708 B1, entitled "Neutral Tandem Telecommunications Network Providing Transiting, Terminating, and Advanced Traffic Routing Services to Public and Private Carrier Networks" (the "708 Patent"). The 708 Patent was issued on October 17, 2006 by the United States Patent and Trademark Office.  A true and correct copy of the 708 Patent is attached hereto as Exhibit A.

**ANSWER:  Upon information and belief, Defendants admit that the '708 Patent was issued on October 17, 2006.  Defendants lack sufficient information to form a belief about the remaining allegations of Paragraph 10, and therefore deny the remaining allegations of Paragraph 10.**

11.     The 708 Patent generally discloses and claims a switching network for routing telecommunications transit traffic between public and private wireline and wireless telephone carrier networks and the method for establishing and operating this network.

**ANSWER:  The allegations of Paragraph 11 seek to characterize the '708 Patent.  Defendants deny that the characterizations are complete or accurate, and respectfully refer the Court to the terms of the '708 Patent and the '708 Patent prosecution**

**history to give full effect to its terms.  Defendants therefore deny the allegations of**

**Paragraph 11.**

12.    Generally, there are two types of providers of local exchange telecommunications services: incumbent local exchange carriers ("ILECs"), such as AT&T, and competitive wireless and wireline telecommunications carriers ("CLECs"), such as Sprint. Prior to the 1990s, when federal legislation was enacted to open telecommunications markets to competition, ILECs enjoyed a monopoly over the provision of local exchange services.  Since the 1990s, more and more CLECs have been providing local exchange services.

**ANSWER:  Defendants lack sufficient information sufficient to form a belief**

**as to the allegations of Paragraph 12 of the Complaint, and they therefore deny these**

**allegations.**

13.    However, CLECs wishing to provide local exchange services traditionally had to pay for access to the ILECs networks, so that all calls coming from and going to the CLECs' customers could be completed.

**ANSWER:  Defendants admit that carriers wishing to provide local exchange**

**services have had to pay other carriers for access to terminate local exchange traffic to**

**another carrier.  Defendants deny the remaining allegations of Paragraph 13.**

14.    Similarly, competitive inter-exchange carriers ("IXCs") wishing to provide toll service traditionally had to pay for access to the ILECs' networks, so that all calls coming from the IXCs' customers could be completed.

**ANSWER:  Defendants admit the allegations of Paragraph 14.**

15.    The 708 Patent discloses a network arrangement allowing for telephony and related traffic that originates with an end user on one CLEC's or IXC's network to be

5

delivered for termination to an end user served by another CLEC's or IXC's network. [sic] without the need for using the ILECs' existing tandem transit network.

**ANSWER:  The allegations of Paragraph 15 seek to characterize the '708**

**Patent.  Defendants deny that the characterizations are complete or accurate, and**

**respectfully refer the Court to the terms of the '708 Patent and the '708 Patent prosecution**

**history to give full effect to its terms.  Defendants therefore deny the allegations of**

**Paragraph 15.**

16.    Prior to the development of Neutral Tandem's technology, the sole providers of tandem transit services were ILECs.  Thus, Neutral Tandem was the first to develop the technology necessary for a competitive provider to successfully enter the tandem transit market.

**ANSWER:  Defendants deny the allegations of Paragraph 16.**

17.    In order to provide its competitive tandem transit service, Neutral Tandem directly connects to each of its competitive carrier customers.  Neutral Tandem also is directly connected to the ILECs in the regions where it operates.

**ANSWER: Defendants lack sufficient knowledge or information sufficient to**

**form a belief as to the allegations of Paragraph 17 of the Complaint.  Defendants therefore**

**deny the allegations of Paragraph 17.**

18.    Neutral Tandem's development of the technology disclosed and claimed in the 708 Patent fosters competition amongst competitive carriers and the ILECs.  With its network and method, Neutral Tandem both lowers competitive carriers' costs to provide service, as well as reduces their dependence on the ILECs.

**ANSWER:  Defendants deny that Neutral Tandem has developed any**

**technology that fosters competition among competitive carriers and the ILECs.**

**Defendants lack sufficient knowledge or information sufficient to form a belief as to the**

**remaining allegations of Paragraph 18, and they therefore deny these allegations.**

19.    For example, individual carriers realize significant savings and efficiencies because Neutral Tandem generally provides and manages the entirety of the interconnection transport and switching facilities between it and its carrier customers, whereas the ILECs require carriers to provide and manage these interconnection facilities.  Neutral Tandem also generally provides and manages the entirety of the interconnection transport and switching facilities between Neutral Tandem and its terminating carriers.  Thus, through the development of its technology disclosed and claimed in the 708 Patent, Neutral Tandem reduces the overall transit cost for its customers, compared to using the ILECs' services.

**ANSWER:  Defendants lack sufficient information sufficient to form a belief as to the allegations of Paragraph 19 of the Complaint, and they therefore deny these allegations.**

20.    Furthermore, a carrier's ability to lower costs through use of Neutral Tandem's network benefits consumers in Illinois and throughout the country.  Specifically, Neutral Tandem enables facilities-based carriers to lower their service costs, facilitating lower end user rates.

**ANSWER:  Defendants lack sufficient information sufficient to form a belief as to the allegations of Paragraph 20 of the Complaint, and they therefore deny these allegations.**

21.    The 708 Patent's technology is also critical to network redundancy and reliability, homeland security, and disaster recovery.  Neutral Tandem hardens the PSTN infrastructure by creating an additional, separate path for termination of telephone calls between carriers, which can be utilized if the ILEC path becomes unavailable.

**ANSWER:  Defendants lack sufficient information sufficient to form a belief as to the allegations of Paragraph 21 of the Complaint, and they therefore deny these allegations.**

22. Defendant Barnicle was employed at Neutral Tandem from approximately February 2003 through approximately October 2005 as Neutral Tandem's president and chief operating officer. In his position as president and chief operating officer, Barnicle had access to and detailed knowledge of Neutral Tandem's intellectual property and business plan.

**ANSWER: Defendant John Barnicle admits that he was employed at Neutral Tandem from approximately February 2003 through approximately October 2005 and that he served as president and chief operating officer during some of that time, and that he had knowledge of Neutral Tandem's business plan. Barnicle denies the remaining allegations of Paragraph 22. Defendants' Peerless and Peerless Illinois lack independent knowledge of the allegations of Paragraph 22, and therefore deny these allegations.**

23. Upon information and belief, since leaving Neutral Tandem, Barnicle has founded Peerless and become its chief executive officer.

**ANSWER: Defendants deny that Barnicle founded Peerless Network. Defendants admit the remaining allegations in Paragraph 23 of the Complaint.**

24. Upon information and belief, Barnicle founded Peerless in order to make, use, sell and/or offer to sell tandem switching networks and related products and services using the same technology developed and patented by Neutral Tandem.

**ANSWER: Defendants deny the allegations of Paragraph 24.**

25. Upon information and belief, Peerless and Barnicle already have begun development of a tandem switching network using Neutral Tandem's technology and intellectual property. Upon information and belief, Peerless and Barnicle have purchased or otherwise acquired the use of switches, fiber optic cables and related hardware for development of Peerless' switching network.

**ANSWER: Defendants deny the allegations of Paragraph 25.**

8

26.    Upon information and belief, Peerless and Barnicle already have contacted at least two of Neutral Tandem's existing customers and requested direct interconnection agreements with such customers.

**ANSWER: Defendants admit the allegations of Paragraph 26. Defendants further state that as a telecommunications carrier, Peerless is obligated under law to interconnect directly or indirectly with other carriers in order to exchange traffic with those carriers.**

27.    Upon information and belief, Peerless and Barnicle have entered into interconnection agreements with multiple ILECs, including Illinois Bell, and have pending requests to enter into such agreements with other ILECs.

**ANSWER: Defendants admit that Peerless Illinois has entered into an interconnection agreement with Illinois Bell. Defendants deny that Peerless or Barnicle have entered into any such agreements. Defendants further state that as a telecommunications carrier, Peerless Illinois is obligated under law to interconnect directly or indirectly with other carriers, including ILECs, in order to exchange traffic. Defendants deny the remaining allegations of Paragraph 27.**

28.    Upon information and belief, Barnicle, as Peerless' chief executive officer, is directing and controlling Peerless' efforts to provide tandem transit services to Neutral Tandem's customers.

**ANSWER: The Defendants deny the allegations of Paragraph 28.**

## COUNT I: INFRINGEMENT OF U.S. PATENT NO. 7,123,708 B1

29.    Neutral Tandem repeats and realleges each of the allegations in paragraphs 1-28 of the Complaint.

**ANSWER: Defendants incorporate and reallege their answers to Paragraphs 1-28, as though set forth herein.**

30.    Subsequent to the issuance of the 708 patent, Peerless has made or used a neutral tandem network embodying the patented invention and/or sold or offered to sell tandem transit service in a manner covered by the patented invention.

**ANSWER:  Defendants deny the allegations of Paragraph 30.**

31.    Peerless has infringed the 708 patent either literally or under the doctrine of equivalents, in violation of 35 U.S.C. § 271.  Peerless' infringing activities include its manufacture and/or use of a neutral tandem network and/or its offer for sale or its sale of tandem transit service utilizing a neutral tandem network in the United States.

**ANSWER:  Defendants deny the allegations of Paragraph 31.**

32.    Peerless does not have any license or authorization to use the inventions described and claimed in the 708 patent.

**ANSWER:  Defendants admit that they do not have a license from Plaintiff for the '708 patent, but deny the remaining allegations of Paragraph 32.  Defendants further state that as a telecommunications carrier, Peerless Illinois is authorized to interconnect directly or indirectly with other carriers in order to exchange traffic with those carriers.**

33.    Peerless' acts of infringement have been and continue to be willful and wanton.

**ANSWER: Defendants deny the allegations of Paragraph 33.**

34.    Neutral Tandem has been damaged in an amount not yet determined as a consequence of the infringing activities of Peerless described herein. Neutral Tandem has been and/or will be irreparably harmed by Peerless' patent infringement. Neutral Tandem will continue to suffer damages and irreparable harm until this Court enjoins Peerless from further infringement of the 708 patent.

**ANSWER:  Defendants deny the allegations of Paragraph 34.**

**COUNT II: INDUCED INFRINGEMENT**

35.    Neutral Tandem repeats and realleges each of the allegations in paragraphs 1-34 of the Complaint.

**ANSWER:  Defendants incorporate and reallege their answers to Paragraphs 1-34, as though set forth herein.**

36.    Defendant Barnicle has directed and controlled and is directing and controlling the activities of Peerless while knowing that those activities infringe the 708 patent. In so doing, Barnicle has actively aided and abetted Peerless' infringement of the 708 patent.

**ANSWER:  Defendants deny the allegation Paragraph 36.**

37.    Defendant Barnicle's conduct was and is deliberate and knowing and was carried out with the specific intent of encouraging Peerless' infringement of the 708 patent.

**ANSWER:  Defendants deny the allegations of Paragraph 37.**

38.     Upon information and belief, Defendant Barnicle knew or should have known that his conduct induced and is inducing Peerless' infringement of the 708 patent.

**ANSWER:  Defendants deny the allegations of Paragraph 38.**

39.     Neutral Tandem has been damaged in an amount not yet determined as a consequence of the Barnicle's infringing activities described herein. Neutral Tandem has been and/or will be irreparably harmed by Barnicle's inducing Peerless' patent infringement. Neutral Tandem will continue to suffer damages and irreparable harm until this Court enjoins Barnicle from inducing further infringement of the 708 patent.

**ANSWER:  Defendants deny the allegations of Paragraph 39.**

### AFFIRMATIVE DEFENSES

Defendants set forth the following affirmative and other defenses.  Defendants do not intend hereby to assume the burden of proof with respect to those matters that, pursuant to law, Neutral Tandem bears the burden.  Defendants reserve all affirmative defenses under Fed.R.Civ.P. 8(c), the Patent Laws of the United States, and any other defense at law or in equity that may now exist or in the future be available based on discovery and further factual investigation of the case.

### FIRST AFFIRMATIVE DEFENSE

Peerless Network and Barnicle have not, do not, and will not, willfully or otherwise infringe any valid and enforceable claim of U.S. Patent No. 7,123,708 B1.

### SECOND AFFIRMATIVE DEFENSE

Peerless Network and Barnicle have not, do not, and will not, induce or contribute to any infringement of any valid and enforceable claim of U.S. Patent No. 7,123,708 B1.

### THIRD AFFIRMATIVE DEFENSE

Each of the claims of U.S. Patent No. 7,123,708 B1 is invalid for failure to satisfy the provisions of one or more of sections 35 U.S.C. §§101 *et seq*., including without limitation, §§102, 103, 112, 116, and / or 282.

### FOURTH AFFIRMATIVE DEFENSE

Each of Neutral Tandem's counts alleging infringement of U.S. Patent No. 7,123,708 B1 against Peerless Network and Barnicle fail to state a claim upon which relief can be granted.

### FIFTH AFFIRMATIVE DEFENSE

Neutral Tandem is precluded from enforcing U.S. Patent No. 7,123,708 B1 under the doctrine of laches and the doctrines of estoppel and waiver, as should in equity bar Neutral Tandem's maintenance of this action.

### SIXTH AFFIRMATIVE DEFENSE

Neutral Tandem is estopped from asserting that any of Defendants' accused products or services infringe any of the claims of U.S. Patent No. 7,123,708 B1 by reasons of actions taken and statements made in the United States Patent and Trademark Office during the prosecution of the application which led to U.S. Patent No. 7,123,708 B1.

### SEVENTH AFFIRMATIVE DEFENSE

Neutral Tandem is barred in whole or in part from obtaining the relief sought in the Complaint by the doctrine of unclean hands.

## EIGHTH AFFIRMATIVE DEFENSE

The relief sought by Neutral Tandem based on Peerless Network's alleged infringement of claims of U.S. Patent No. 7,123,708 B1 is barred in whole or in part by the doctrine of equitable estoppel.

## NINTH AFFIRMATIVE DEFENSE

U.S. Patent No. 7,123,708 B1 is unenforceable as a result of the inequitable conduct of Neutral Tandem and its representatives who were aware of information material to the patentability of U.S. Patent No. 7,123,708 B1, but withheld concealed, and/or mischaracterized the information with an intent to deceive the United States Patent and Trademark Office, as set forth in the counterclaims set forth below.

## COUNTERCLAIMS

1.     Peerless Network, LLC, Peerless Network of Illinois, LLC and John Barnicle ("Counterclaim Plaintiffs") bring the following Counterclaims against Neutral Tandem, LLC ("Counterclaim Defendant"), seeking, *inter alia*, a declaratory judgment that U.S. Patent No. 7,123,708 B1 is invalid, unenforceable and not infringed.  Furthermore, these Counterclaims are also directed to violations of the Lanham Act, the antitrust laws of United States, and state common law torts, including without limitation, tortious interference, unfair competition, and commercial disparagement.

## PARTIES

2.     Counterclaim Plaintiff Peerless Network, LLC ("Peerless") is a limited liability company organized under the laws of the State of Delaware, having its principal place of

14

business at 225 W. Washington St., Suite 1285, Chicago, IL 60606. Peerless is a holding company with subsidiaries that provide information and telecommunications services in various states.

3.      Counterclaim Plaintiff Peerless Network of Illinois, LLC ("Peerless Illinois") is a limited liability company having its principal place of business at 225 W. Washington St., Suite 1285, Chicago, IL 60606. Peerless Illinois is certified by the Illinois Commerce Commission to provide local and interexchange telecommunications services, pursuant to the certificate of service authority issued by the Illinois Commerce Commission on December 21, 2005. Peerless Illinois offers the public a competitive information and telecommunications service. Unless otherwise specified, Peerless and Peerless Illinois are referred to herein as "Peerless Network."

4.      Counterclaim Plaintiff John Barnicle ("Barnicle") is an individual is a resident of Cook County, Illinois. Barnicle is the President and Chief Executive Officer of Peerless Network.

5.      Neutral Tandem, Inc. alleges that it is a Delaware corporation having its principal place of business at One South Wacker Drive, Suite 200, Chicago, Illinois 60606.

6.      Upon information and belief, Neutral Tandem operates a wholly-owned subsidiary Neutral Tandem-Illinois, LLC ("Neutral Tandem Illinois"), a Delaware limited liability company having its principal place of business at One South Wacker Drive, Suite 200, Chicago, Illinois 60606. Neutral Tandem Illinois is a registered telecommunications provider within the State of Illinois.

7.     Upon information and belief, both Neutral Tandem, Inc. and Neutral Tandem-Illinois, LLC purport to provide "tandem transit" services, which they describe as the intermediary switching of telecommunications traffic that originates on the networks of one telecommunications provider, and the delivery of that traffic to the network of a second telecommunications provider.  Neutral Tandem, Inc. and Neutral Tandem Illinois are often indistinguishable in the way they conduct business.  Neutral Tandem, Inc. and Neutral Tandem-Illinois, LLC are together referred to herein as "Neutral Tandem."

## JURISDICTION AND VENUE

8.     This Court has jurisdiction over these counterclaims pursuant to 28 U.S.C. §§ 1331, 1337, 1338(a), 2201, 2202 and 35 U.S.C. § 271(e)(2) and 15 U.S.C. § 2.  This court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) with respect to state law counterclaims.

9.     This Court has personal jurisdiction over Neutral Tandem, Inc. because, *inter alia*, Neutral Tandem, Inc. voluntarily filed its Complaint to which these counterclaims are directed in this Court.

10.     This Court has personal jurisdiction over Neutral Tandem, Inc. because Neutral Tandem, Inc. maintains its corporate offices in Chicago, Illinois.

11.     Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391 and 1400(b).

16

## GENERAL ALLEGATIONS

12.    Peerless Network and its affiliates use an innovative national network topology design that is distinct from the market-based use of Local Access and Transport ("LATA") based network designs.

13.    The national network topology used by Peerless Network relies on Internet-Protocol ("IP") technology to provide signaling and call setup support for all calls originating, terminating or traversing its network.  Centralized, redundant call routing databases perform these functions on a national level versus the industry norm of localized switching and signaling control.

14.    Peerless Network also uses regional media centers to direct calls from multiple LATAs through a centrally located regional media center, into the Peerless national switching fabric.  Peerless Network's regional media centers are termination points for customer and network switch interconnections via locally-accessed transport points of presence.

15.    Peerless Network does not own any fiber-based facilities.  Instead, to transport calls between its local, regional and national points of presence and switching facilities, Peerless Network leases fiber-based transport facilities or services from other carriers, which are responsible for monitoring and maintaining the facilities and the equipment providing the transport service.

## NEUTRAL TANDEM

16.    Neutral Tandem claims to be the owner of the U.S. Patent No. 7,123,708 B1 (the "'708 Patent").

17.    On March 1, 2002, Ronald William Gavillet ("Gavillet"), General Counsel for Neutral Tandem, filed a patent application for a method of providing, through a neutral tandem telecommunications network, connectivity amongst themselves ("transit traffic") and between themselves and metropolitan local exchange carrier central offices ("terminating traffic.") ('708 Patent at Abstract.)

18.    This method of transiting traffic (among the public and private wireline and wireless networks) and terminating traffic (to local exchange carriers) is made through a neutral tandem network comprised of switching equipment located at various points in a metropolitan area.  ('708 Patent at Abstract.)

19.    The services (transit and termination) are provided using a switch or soft switch at a higher level to the switching network of the tandems or switches made available by Regional Bell Operating Companies.  ('708 Patent at Abstract.)  *See* 47 U.S.C. § 153.

20.    On June 20, 2005, the U.S. Patent Office rejected the application, finding that the purported invention was unpatentable.

21.    On September 20, 2005, Gavillet filed an amendment to the application, modifying the claims of the invention.  Gavillet represented that the invention was providing a tandem switching function for the transit and termination of calls using a neutral tandem network, independent of the tandem or switch that either originates a call, or terminates a call.

22.    On December 13, 2005, the U.S. Patent Office again rejected the application, finding that the purported invention was unpatentable.

23.    The Patent Examiner concluded that the prior art included a method of connecting one tandem switch network to another switched network.

24.    The Patent Examiner concluded that it would have been obvious to one skilled in the art at the time of the invention to use a tandem to connect one tandem switch network to another tandem switch network.

25.    On April 3, 2006, Gavillet again modified the claims of the invention.  Gavillet represented that the prior art does not teach that a tandem switch can be connected to another tandem, and thus also does not teach a "network" connecting the switch to the public and private wireline and wireless carrier networks and to "tandem switches" of the public and private wireline and wireless carrier networks.

26.    Gavillet further represented that it was not obvious from the prior art to use a tandem to connect one tandem switch network to another network.

27.    Gavillet  amended the then existing claims, and made additional claims.

28.    A person of ordinary skill in the art at the time of the invention such as the General Counsel of a telecommunications carrier, such as Gavillet, would understand that the prior art included other telecommunications carriers that relied on tandem switches to connect one telecommunications network to another telecommunications network for the purpose of transiting traffic between them, and for the purpose of terminating traffic to a local exchange carrier ("LEC") such as described in paragraphs 29-33, below.

29.    For example, in 1991, the Federal Communications Commission initiated a proceeding to adopt federal rules to require certain Local Exchange Carriers to provide "tandem

switch providers" signaling information necessary to connect one telecommunications carriers' network to another carrier's network through the use of tandem access points. *See In the Matter of Expanded Interconnection with Local Telephone Company Facilities*, CC Dkt. No. 91-141, Memorandum Opinion and Order, 9 FCCRcd 5154 (1994) ("*Virtual Collocation Order*"). The FCC referred to these companies that provide "access" from one network to another network as either "Competitive Access Providers" ("CAPs") or as "tandem switching providers."

30.    Since at least 1994, there have been numerous telecommunications carriers that have relied on tandem switches to provide one network access to another network.

31.    Upon information and belief and by way of example, in 1996, Great Lakes Comnet was organized in 1996 as an "independently owned and operated Tandem Switch" provider in Michigan. It has a neutral tandem switch that is connected to 150 other telecommunications carriers, for the purpose of transiting traffic and terminating traffic.

32.    Upon information and belief, Arbinet was organized in 1996 for the purpose of providing, among other things, tandem switching services that interconnected one communications network to other communications networks for the purpose of transiting and terminating traffic.

33.    Upon information and belief, on or before July 1996, Teleport Communications Group was providing transport and termination services as a CAP using a tandem or intermediate switch between interexchange carriers and LECs.

34.    Many of the claims made in Patent '708 are also false. Upon information and belief, these false statements impeded the Patent Examiner's ability to determine patentability,

and violated the duty of candor owed to the U.S. Patent Office.  Patent '708 represents that

Regional Bell Operating Company ("RBOC") tandem "requires dedicated connections to each

tandem in a metropolitan and often multiple connections to each of those tandems." ('708 Patent

at Column 9.)  This is not true.

35.    Illinois Bell Telephone Company, an RBOC that operates in Illinois, does not

require dedicated connections to each tandem in LATA 358.

36.    Patent '708 represents that an RBOC requires "carriers to scale down their high

capacity networks to the narrow bandwidth capacity compatible with the RBOC legacy circuit

switches." ('708 Patent at Column 9.)  This is not true.

37.    Illinois Bell Telephone Company, an RBOC that operates in Illinois, permits

carriers to interconnect using high capacity fiber facilities.

38.    Patent '708 represents that a Neutral Tandem Network, as described in the Patent,

"will allow carriers to access an entire metropolitan region through a single connection."  ('708

Patent at Column 9.)  This is not true.

39.    Illinois Bell Telephone Company and other RBOCs will not permit carriers to

terminate traffic destined to one of their end users to be routed through a Neutral Tandem

Network, and will instead require direct interconnection.

40.    Patent '708 represents that "the RBOCs are reluctant to commit the necessary

resources and support to grow traffic at the tandems and to . . . build the traffic interfaces and

access facilities to meet the escalating needs of its competitors."  ('708 Patent at Column 7.)

This is not true.   Upon information and belief, Illinois Bell Telephone Company has grown the number of tandems in LATA 358 from five, in 1996, to eighteen in 2008.

41.    A person of ordinary skill in the art, such as Gavillet, would understand and should have understood that such information would be material to a Patent Examiner in light the Declarant's assertion that as of the filing date of the application, the prior art did "not provide tandem switching and transport functionality in a Neutral Tandem Network as claimed."

42.    On or about June 12, 2008, Neutral Tandem caused to be filed a complaint for Patent Infringement, which alleges, among other things, that Peerless Network maintains a telecommunications network that infringes the claims of the '708 Patent.  Neutral Tandem also claims that Barnicle aided and abetted the purported infringement by Peerless Network.

43.    Counterclaim Plaintiffs deny any infringement of the '708 Patent.  Counterclaim Plaintiffs further allege that Neutral Tandem obtained its patent wrongfully with an intent to deceive the U.S. Patent and Trademark Office, causing the '708 Patent to issue with claims covering known unpatentable subject matter.  Such conduct has adverse repercussions in the telecommunications market.

44.    Upon information and belief, during the period from June 2003 through November 2003, Neutral Tandem made statements to potential investors that Neutral Tandem had filed the application for the '708 Patent.

45.    Upon information and belief, Jim Hynes, then Chief Executive Officer and current Chairman of Neutral Tandem, Inc., made statements to these potential investors that questioned the patentability of a neutral tandem network.

46.    Upon information and belief, Mr. Hynes stated to potential investors that the patent, if ever granted, could be used only as a "license to fight" against potential competitors implying that he knew the 708 patent would not be able to be used to exclude potential competitors from providing the services provided by Neutral Tandem, Inc.

47.    Upon information and belief, Mr. Hynes stated to potential investors that the patent, if ever granted, could be used to "step on the air supply" of an emerging competitive company implying that he knew the 708 patent would not be able to be used to exclude potential competitors from providing the services provided by Neutral Tandem, Inc.

48.    Peerless Network has had negotiations with Globalcom, Inc., a local exchange carrier operating in Illinois, regarding Globalcom, Inc.'s prospective purchase of services from Peerless Network.

49.    Upon information and belief, on or about June 27, 2008, Neutral Tandem, by and through its employees, including David Lopez and Rob Junkroski, both officers of Neutral Tandem, discussed with a Globalcom, Inc. the patent infringement lawsuit  recently filed by Neutral Tandem, Inc. against the Counterclaim Plaintiffs.

50.    At the time that Neutral Tandem discussed the pending litigation with Globalcom, Inc., Peerless Network and Globalcom, Inc. had established a direct physical network connection in anticipation of the imminent signing of a traffic exchange agreement.

51.    Upon information and belief, Neutral Tandem was aware that Globalcom and Peerless Network were negotiating the terms and conditions for traffic exchange.

52.    Upon information and belief, Mr. Lopez, and/or Mr. Junkroski made false representations of fact concerning the lawsuit, the viability of Neutral Tandem's claimed patent, and the effect on Counterclaim Plaintiff's business.

53.    These statements by Mr. Lopez and/or Mr. Junkroski are false.

54.    Upon information and belief, Mr. Lopez, and/or Junkroski further stated to Globalcom, Inc. that Peerless Network was going to use this pending litigation to "go hard after Peerless" or words to that effect.

55.    These statements by Mr. Lopez and/or Mr. Junkroski were made in bad faith, with the intent to have an adverse affect on Peerless Network's negotiations with Globalcom.

56.    As a direct result of Globalcom, Inc.'s false statements, Globalcom, Inc. has not sent traffic across the established network facilities connecting their network to Peerless Illinois.

57.    As a result, Counterclaim Plaintiffs have suffered damages, including but not limited to lost revenue and profits from the Counterclaim Defendant' interference with Globalcom, Inc.

## FIRST COUNTERCLAIM — DECLARATION OF PATENT NON-INFRINGEMENT

58.    Counterclaim Plaintiffs repeat and re-allege the allegations contained in Paragraphs 1 through 57 as if fully set forth herein.

59.    Counterclaim Plaintiffs do not infringe, contribute to the infringement of, or induce infringement of any valid and enforceable claim of the '708 Patent.

60.     Counterclaim Plaintiffs are entitled to a judgment that their provision of telecommunications services do not infringe, contribute to, or induce infringement of any valid and enforceable claim of the '708 Patent.

## SECOND COUNTERCLAIM — DECLARATION OF PATENT INVALIDITY

61.     Counterclaim Plaintiffs repeat and re-allege the allegations contained in Paragraphs 1 through 57 as if fully set forth herein.

62.     The claims of the '708 Patent are invalid for failure to satisfy the provisions of one or more of sections 101, 102, 103, 112, 116, and / or 282 of Title 35 of the United States Code.

63.     Counterclaim Plaintiffs are entitled to a judgment that each and every claim of the '708 Patent is invalid.

## THIRD COUNTERCLAIM — UNENFORCEABILITY:  UNCLEAN HANDS, INEQUITABLE CONDUCT, AND PATENT MISUSE

64.     Counterclaim Plaintiffs repeat and re-allege the allegations contained in Paragraphs 1 through 57 as if fully set forth herein.

65.     The '708 Patent is unenforceable for acts of inequitable conduct and unclean hands committed during the procurement thereof.

66.     Neutral Tandem failed to provide the most relevant art to the Patent Examiner in the prosecution of the application leading to the '708 Patent.

67.     As set forth above, in Paragraphs 17 through 41, Neutral Tandem made a number of mischaracterizations in the prosecution history with respect to the prior art.

68.     The failure of Neutral Tandem to provide known relevant prior art in the prosecution of the application leading to the '708 Patent, and Neutral Tandem's mischaracterization of the prior art, were material, and the circumstantial factors surrounding such failure and mischaracterization support an intent to deceive, thereby evidencing inequitable conduct in the procurement of the '708 Patent, and procurement of the patent by unclean hands.

69.     By extending the patent claims to cover prior art processes taught prior to the filing date of the application leading to the '708 Patent, Neutral Tandem has improperly exploited its patent resulting in continuing patent misuse.

70.     Further, the filing of an objectively baseless lawsuit based on a patent which would clearly be understood to be invalid for anticipation, obviousness, and / or a violation of the duty of candor owed to the U.S. Patent Office, constitutes patent misuse, and the continued prosecution of such case constitutes litigation misconduct.

71.     Counterclaim Plaintiffs are entitled to a declaratory judgment that Neutral Tandem is barred from enforcing the '708 Patent, and entitled to damages arising out of Neutral Tandem's conduct.

## FOURTH COUNTERCLAIM – MONOPOLIZATION

72.     Counterclaim Plaintiffs repeat and re-allege the allegations contained in Paragraphs 1 through 57 as if fully set forth herein.  Pleading in the alternative, Counterclaim Plaintiffs state as follows:

73.     Neutral Tandem has represented that it is the exclusive neutral tandem network provider in the United States.  Upon information and belief, Neutral Tandem makes a significant

portion of its revenue from the sale of transit and termination services to other telecommunications carriers.

74.    Neutral Tandem currently possesses monopoly power in providing the only neutral tandem network service in the telecommunications network.

75.    By attempting to enforce a patent it knows to be invalid, Neutral Tandem seeks to prevent or delay entry of a foreseeable competing provider in the marketplace (*i.e.* Peerless Network) in hopes of maintaining its monopoly position.

76.    Neutral Tandem's threats of infringement litigation are intended to protect its purported monopolistic position offering transit and termination services, have frustrated and retarded Peerless Network's business, and have resulted in harm to competition, in violation of § 2 of the Sherman Act.

77.    Neutral Tandem's false statement to Globalcom, Inc. that Peerless Network was infringing on Patent '708 was intended to protect its purported monopolistic position offering transit and termination services, and have resulted in harm to competition, in violation of § 2 of the Sherman Act.

78.    Such actions by Neutral Tandem have caused and will continue to cause the prices for transit and termination services to be maintained at anticompetitive levels, create the false impression that Neutral Tandem is the exclusive source of transiting services, and will have the effect of preventing competitors from entering the market.

79.    Such actions by Neutral Tandem have caused and will continue to cause antitrust injury and harm to competition in the transit and termination market.

80.    Neutral Tandem's impermissible conduct has caused real and threatened injury to Peerless Network because, *inter alia*, it has resulted in a loss of revenue and profit for Peerless Network, and hindered Peerless Network from entering the transit and termination market.

81.    Such actions by Neutral Tandem entitle Counterclaim Plaintiffs to damages arising out of the Neutral Tandem's conduct, trebled due to Neutral Tandem's anticompetitive behavior.

82.    Peerless Network is entitled to a judgment that Neutral Tandem's conduct constitutes unlawful monopolization under 15 U.S.C. § 2.

## FIFTH COUNTERCLAIM - MONOPOLY LEVERAGING

83.    Counterclaim Plaintiffs repeat and re-allege the allegations contained in Paragraphs 1 through 57 as if fully set forth herein.  Pleading in the alternative, Counterclaim Plaintiffs state as follows:

84.    Neutral Tandem has represented that it is the exclusive neutral tandem network provider in the United States.  Upon information and belief, Neutral Tandem makes a significant portion of its revenue from the sale of transit and termination services to other telecommunications carriers.

85.    In the event that the '708 Patent is enforceable, Neutral Tandem then currently possesses monopoly power in providing the only neutral tandem network service in the telecommunications network protected by the '708 Patent.

86.    Peerless Network is a competitive local exchange carrier providing transit services via a nationally based switching infrastructure.

28

87.    Even if the '708 Patent is valid, which Counterclaim Plaintiffs vigorously dispute, by extending the patent claims of the '708 Patent to cover Peerless Network, Neutral Tandem is attempting gain a monopoly in nationally routed transit providers, a market outside the scope of the '708 Patent.

88.    Further, the filing of an objectively baseless lawsuit based on a patent which would clearly be understood to exclude Peerless Network and the market in which it operates, and the continuing prosecution of such case, constitutes an attempt to gain a monopoly in nationally routed transit providers, a market outside the scope of the '708 Patent.

89.    Further, Neutral Tandem's false statement to Globalcom, Inc. that Peerless Network was infringing on Patent '708, a patent that does not cover the market in which Peerless Network operates, was intended to gain a monopoly in nationally routed transit providers, a market outside the scope of the '708 Patent, and intended to create a false impression that Neutral Tandem is the exclusive source of transiting services.

90.    Such actions by Neutral Tandem interfere with the ability of Peerless Network to provide telecommunications services to other carriers.

91.    Such actions by Neutral Tandem resulted in a lessening of competition and a loss of revenue and profits.

92.    Such actions by Neutral Tandem have caused and will continue to cause antitrust injury and harm to competition in the transit and termination market.

93.     Such actions by Neutral Tandem entitle Counterclaim Plaintiffs to damages arising out of the Neutral Tandem's conduct, trebled due to Neutral Tandem's anticompetitive behavior.

94.     Peerless Network is entitled to a judgment that Neutral Tandem's conduct constitutes unlawful monopolization under 15 U.S.C. § 2.

## SIXTH COUNTERCLAIM – ILLINOIS ANTITRUST ACT

95.     Counterclaim Plaintiffs repeat and re-allege the allegations contained in Paragraphs 1 through 57 as if fully set forth herein.  Pleading in the alternative, Counterclaim Plaintiffs state as follows:

96.     The Illinois Antitrust Act, 740 ILCS 10/1 *et seq*., prohibits establishing, maintaining, using, or attempting to acquire monopoly power over any substantial part of trade or commerce of this State for the purpose of excluding competition in trade or commerce.  740 ILCS 10/3(3).

97.     The filing of an objectively baseless lawsuit based on a patent which would clearly be understood to exclude Peerless Network and the market in which it operates, and the continuing prosecution of such case, constitutes an attempt to gain a monopoly in nationally routed transit providers, a market outside the scope of the '708 Patent.

98.     Further, upon information and belief, Neutral Tandem's representatives have undertaken activities to tortiously interfere with Peerless Network's present and future business interest in derogation of the Illinois Antitrust Act, 740 ILCS 10/1 *et seq*., by advising Peerless Network's prospective customers that Peerless Network is interfering with Neutral Tandem's

Patent '708, by threatening Peerless Network and Barnicle with legal action to curtail their provision of telecommunications services, and by creating a false impression that Neutral Tandem is the exclusive source of transiting services.

99.    Such actions by Neutral Tandem have tortiously interfered and caused injury to Peerless Network's present and future business interest, by interfering with the ability of Peerless Network to provide telecommunications services to other carriers.

100.    Such actions by Neutral Tandem resulted in a lessening of competition and a loss of revenue and profits.

101.    Such actions by Neutral Tandem have caused and will continue to cause antitrust injury and harm to competition in the transit and termination market.

102.    The transit and termination market is a substantial part of trade or commerce in Illinois.

103.    The aforesaid acts of Neutral Tandem have caused and, unless said acts are restrained by this Court, will continue to cause Peerless Network monetary damage and irreparable injury.

104.    Peerless Network is entitled to a judgment that Neutral Tandem's practices amount to a violation of Illinois Antitrust Act, 740 ILCS 10/1 *et seq.*

## SEVENTH COUNTERCLAIM -
## TORTIOUS INTERFERENCE WITH PROSPECTIVE BUSINESS RELATIONS

105.    Peerless Network repeats and reallege the allegations the allegations contained in Paragraphs 1 through 57 as if fully set forth herein.

106.    Illinois common law prohibits purposeful interference with a reasonable business expectancy.

107.    Upon information and belief, Neutral Tandem was aware that Peerless Network and Globalcom, Inc. were entering into a business relationship.

108.    Despite its knowledge of this relationship, Neutral Tandem deliberately interfered with Peerless Network's business relations with Globalcom by making false representations of fact concerning the viability of Neutral Tandem's claimed patent and the effect of the recently filed patent litigation on Counterclaim Plaintiff's business, creating a false impression that Neutral Tandem is the exclusive source of transiting services.

109.    Neutral Tandem's willful, intentional, unlawful and wrongful false and misleading statements, representations and mis-descriptions of Peerless Network's services interfered with Peerless Network's business relations and business, damaged Peerless Network's reputation, and resulted in irreparable injury to Peerless Network.

110.    Peerless Network has demonstrable injury resulting from Neutral Tandem's false statement, including, *inter alia*, the loss of revenue and profit.

111.    The aforesaid acts of Neutral Tandem have caused and, unless said acts are restrained by this Court, will continue to cause Peerless Network monetary damage and irreparable injury.

## EIGHTH COUNTERCLAIM - LANHAM ACT

112.    Peerless Network repeats and realleges the allegations contained in Paragraphs 1 through 57 as if fully set forth herein.

32

113.    Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), provides that "(1) [a]ny person who, on or in connection with any goods or services, … uses in commerce any word, … false or misleading description of fact, or false or misleading representation of fact, which … (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act."

114.    Upon information and belief, on or about June 27, 2008, Neutral Tandem, by and through its employees, including David Lopez and Rob Junkroski, Mr. Lopez, and/or Mr. Junkroski made false representations of fact concerning the viability of Neutral Tandem's claimed patent and the effect of the recently filed patent litigation on Counterclaim Plaintiff's business, creating a false impression that Neutral Tandem is the exclusive source of transiting services.

115.    This statement by Mr. Lopez and/or Junkroski is false.

116.    This false statement by Neutral Tandem misrepresents the nature of Peerless Network's services and creates a false impression that Neutral Tandem is the exclusive source of transiting services.

117.    Neutral Tandem's false statement concerned telecommunications services entering interstate commerce.

118.    Neutral Tandem's false statement was directed to Globalcom, Inc.

33

119.    Neutral Tandem's false statement to Globalcom, Inc. was intended to deceive Globalcom, Inc. and to persuade it not to purchase services from Peerless Network.

120.    Peerless Network has demonstrable injury resulting from Neutral Tandem's false statement, including, *inter alia*, the loss revenue and profit from Globalcom, Inc.

121.    Such actions by Neutral Tandem have directly caused and will continue to cause Peerless Network harm through loss of customers, revenue, and profits.

122.    Such actions by Neutral Tandem entitle Peerless Network to damages arising out of the Neutral Tandem's conduct.

123.    Peerless Network is entitled to a judgment that Neutral Tandem's conduct constitutes a violation of section 43(a) of the Lanham Act, 15 U.S.C. § 1125.

## NINTH COUNTERCLAIM - COMMERCIAL DISPARAGEMENT

124.    Peerless Network repeats and realleges the allegations contained in Paragraphs 1 through 57 as if fully set forth herein.  Pleading in the alternative, Peerless Network states as follows:

125.    Commercial disparagement prohibits false and demeaning statements regarding the quality of another's services to an identified third-party with whom the plaintiff had an expectancy of doing business.

126.    Upon information and belief, on or about June 27, 2008, Neutral Tandem, by and through its employees, including David Lopez and Rob Junkroski, Mr. Lopez, and/or Mr. Junkroski made false representations of fact concerning the viability of Neutral Tandem's claimed patent and the effect of the recently filed patent litigation on Counterclaim Plaintiff's

34

business, creating a false impression that Neutral Tandem is the exclusive source of transiting services.

127.    This statement by Mr. Lopez and/or Junkroski is false.

128.    This false statement by Neutral Tandem concerns the quality of Peerless Network's services.

129.    This false statement by Neutral Tandem demeans the quality of Peerless Network's services.

130.    Neutral Tandem's false statement was directed to Globalcom, Inc.

131.    Peerless Network had an expectancy of doing business with Globalcom, Inc. Globalcom, Inc. had put in place the requisite physical network infrastructure to send Peerless Network traffic. Following Neutral Tandem's false statement, Globalcom, Inc. has sent no traffic over the physical infrastructure.

132.    Neutral Tandem's willful, intentional, unlawful and wrongful false and misleading statements, representations and mis-descriptions of Peerless Network's services interfered with Peerless Network's business relations and business, damaged Peerless Network's reputation, and resulted in irreparable injury to Peerless Network.

133.    Peerless Network has demonstrable injury resulting from Neutral Tandem's false statement, including, *inter alia*, the loss of business and revenue from Globalcom, Inc.

134.    The aforesaid acts of Neutral Tandem have caused and, unless said acts are restrained by this Court, will continue to cause Peerless Network monetary damage and irreparable injury.

## **PRAYER FOR RELIEF**

WHEREFORE, Counterclaim Plaintiffs respectfully request that this Court:

A.    Enter an Order dismissing the Complaint in its entirety;

B.    Enter a declaratory judgment that Counterclaim Plaintiffs have not infringed, are not infringing, and have induced infringement of the '709 Patent;

C.    Enter a declaratory judgment that the '708 Patent is invalid;

D.    Award Counterclaim Plaintiffs actual pecuniary and consequential damages, and trebled damages for antitrust violations;

E.    Find that this is an exceptional case and award to Counterclaim Plaintiffs their attorneys' fees in this action pursuant to 35 U.S.C. § 285;

F.    Enter judgment in favor of Peerless, Peerless Illinois, and John Barnicle actual, pecuniary and consequential damages arising out of Defendants' unlawful conduct, as alleged in the Counterclaims;

G.    Award Counterclaim Plaintiffs their costs and expenses; and

H.    Grant Counterclaim Plaintiffs such other and further relief as may be just and proper.

Defendants and Counterclaim Plaintiffs hereby request a jury trial for all issues triable by Jury.

Dated:    July 28, 2008                    Respectfully submitted,

                                           ___/s/ David A. Rammelt_____

David Yohannan                             David A. Rammelt (Bar No.6203754)
Kelley Drye & Warren LLP                   Henry T. Kelly (Bar No. 6196301)
3050 K Street, NW                          Kelley Drye & Warren LLP
Washington, DC 20007                       333 W. Wacker Dr., Ste. 2600
(202) 342-8400 (telephone)                 Chicago, IL  60606
(202) 342-8451 (facsimile)                 (312) 857-7070 (telephone)
                                           (312) 857-7095 (facsimile)
                                           *Attorneys for Peerless Network, LLC, Peerless*
                                           *Network of Illinois, LLC and John Barnicle*