UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NEUTRAL TANDEM, INC., <br><br> Plaintiff, <br><br> v. <br><br> PEERLESS NETWORK, LLC; <br> PEERLESS NETWORK of <br> ILLINOIS, LLC; and JOHN BARNICLE, <br><br> Defendants. | No. 08 C 3402 <br><br> Judge John W. Darrah |
| PEERLESS NETWORK, LLC; <br> PEERLESS NETWORK of <br> ILLINOIS, LLC; and JOHN BARNICLE, <br><br> Counter-Plaintiffs <br> v. <br><br> NEUTRAL TANDEM, INC., <br><br> Counter-Defendant. | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Neutral Tandem, Inc. ("NT"), brought suit against Peerless Network, LLC; Peerless Network of Illinois, LLC; and John Barnicle (collectively "Peerless"), alleging patent infringement and induced infringement. Peerless filed a counterclaim against NT. Before the Court is NT's motion to dismiss or, in the alternative, bifurcate certain counts of the counterclaim.

## BACKGROUND

In the original Complaint, NT charged Peerless with infringement and/or inducing infringement of U.S. Patent No. 7,123,708 B1 ("the '708 Patent"). According to the Complaint, the '708 Patent "generally discloses and claims a switching network for routing telecommunications traffic between public and private wireline and wireless telephone carrier networks and the method for establishing and operating this network."

Generally, there are two types of providers of local exchange telecommunications services: incumbent local exchange carriers ("ILECs") and competitive wireless and wireline telecommunications carriers ("CLECs"). Traditionally, CLECs wishing to provide local exchange service had to pay for access to the ILECs' networks so that calls coming from and going to the CLECs' customers could be completed. Also, competitive inter-exchange carriers ("IXCs") wishing to provide toll service had to pay the ILEC for access to their networks so that calls coming from the IXCs' customers could be completed. NT claims that the '708 Patent discloses a network arrangement allowing for traffic that originates with an end user on a CLEC's or IXC's network to be delivered to an end user served by another CLEC or IXC without the need to use the ILEC's network. NT claims that prior to its development of its patented technology, ILECs were the sole providers of this "tandem transit service." However, by using the patented technology to connect its competitive carrier customers, NT claims to have become the first provider of "neutral" tandem transit service. NT asserts that while ILECs are still significant providers of tandem transit service, NT's system "fosters competition amongst competitive carriers and ILECs."

The counterclaim filed by Peerless contains nine counts. Counts I-III, which are not challenged in NT's motion, attack the scope, validity and enforceability of the '708 patent. Counts IV-VI (the "antitrust counts") allege violations of the antitrust laws against NT. Count IV alleges monopolization in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2. Count V, pled in the alternative, alleges that if the '708 Patent is enforceable, NT has leveraged its monopoly power in providing the only neutral tandem network service to gain monopoly power in nationally routed transit providers, also in violation of 15 U.S.C. § 2. Count VI alleges a violation of the Illinois Antitrust Act, 704 ILCS 10/1, *et seq.*, on the same grounds.

Counts VII-IX (the "disparagement counts") are based on statements allegedly made by NT to Globalcom, Inc., allegedly a potential customer of Peerless, regarding the scope and validity of the '708 Patent and the litigation between the parties. Count VII alleges tortious interference with prospective business relations in violation of Illinois common law. Count VIII alleges a violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). Count IX alleges commercial disparagement.

NT has moved to dismiss Counts IV-IX.

## LEGAL STANDARD

In ruling on a motion to dismiss, the court must accept as true all well-pleaded factual allegations and draw reasonable inferences in favor of the plaintiff. *Sprint Spectrum L.P. v. City of Carmel, Ind.*, 361 F.3d 998, 1001 (7th Cir. 2004). Federal Rule of Civil Procedure 8(a)(2) requires that the complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." To meet Rule 8(a)(2)'s requirements "the complaint must describe the claim in sufficient detail to give the defendant fair notice of what the . . . claim is

3

and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1964 (2007) (*Bell Atlantic*). Second, the complaint "must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level'; if they do not, the plaintiff pleads itself out of court." *E.E.O.C. v. Concentra Health Serv., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (citing *Bell Atlantic*, 127 S. Ct. at 1965, 1973 n. 14).

## ANALYSIS

### *Antitrust Counterclaims*

NT raises two arguments against Peerless's antitrust counterclaims: (1) that Peerless has not and cannot properly define the relevant market and (2) that Peerless failed to plead facts that would strip NT of its antitrust immunity as a patentee.

With respect to proper market definition, Peerless alleges that NT provides "the only neutral tandem network service in the telecommunications network." NT argues that Peerless has impermissibly used an artificial, litigation-based definition, defining the relevant market so as to include only NT's business. NT argues that Peerless offers no explanation as to why the relevant market should be limited to neutral tandem network service, rather than including all tandem transit service. And that Peerless's pleading describes a competitive market for tandem service in that it fails to state why such service is not a reasonable interchangeable substitute for the tandem transit services offered by NT. Peerless insists that the issue of market definition is disputed and that it is not appropriate to consider the question at this stage of the litigation.

In stating a claim for monopolization or attempted monopolization under § 2 of the Sherman Act, the claimant has the burden of alleging a relevant market. *Rohlfing v. Manor Care, Inc.*, 172 F.R.D. 330, 345 (N.D. Ill. 1997) (citing *TV Communications Network v. Turner Network*, 964 F.2d 1022, 1025 (10th Cir.1992). A relevant market "is determined 'by the reasonable interchangeability of use or the cross-elasticity of demand between the product itself and substitutes for it.'" *Lawrence H. Flynn, Inc. v. Philip Morris USA, Inc.*, 2006 WL 211823 (N.D. Ill. 2006) (*Flynn*) (quoting *Queen City Pizza, Inc. v. Domino's Pizza, Inc.*, 124 F.3d 430, 436 (3rd Cir.1997) (*Queen City Pizza*)). A proposed market that "clearly does not encompass all interchangeable substitute products . . . is legally insufficient." *Siemer v. Quizno's Franchise Co. LLC*, 2008 WL 904874 (N.D. Ill. 2008) (*Siemer*) (quoting *Queen City Pizza*, 124 F.3d at 346)).

Peerless's counterclaims clearly allege that NT is the sole provider of neutral tandem transit service. While others may also provide transit service, that service is not independent of the ILECs and is therefore not neutral. At this stage of the proceedings, it is factually unclear whether the relevant market includes all tandem transit service or neutral tandem transit service alone, as pled by Peerless. This factual question cannot now be resolved. Peerless has made a plausible case that the relevant market should be limited to neutral tandem transit service. Thus, NT's motion to dismiss the antitrust counts on the basis that Peerless failed to define the relevant market must be denied.

NT's argument for dismissal based on antitrust immunity also fails. Specifically, NT claims Peerless failed to plead facts sufficient to overcome the immunity from antitrust laws held by NT as a patent holder seeking to enforce its patent. *See Q-Pharma, Inc. v. Andrew Jergens, Co.*, 360 F.3d 1295, 1304 (Fed. Cir. 2004) ("A patent owner who brings a suit for infringement,

without more, is generally exempt from the antitrust laws for that action . . ."). Peerless responds that it has pled the elements necessary to support a *Walker Process* claim against NT, i.e. that the patent was obtained through knowing and willful fraud. *See Nobelpharma AB v. Implant Innovations, Inc.*, 141 F.3d 1059, 1068 (Fed. Cir. 1998) (citing *Walker Process Equipment, Inc. v. Food Machinery & Chemical Corp.*, 382 U.S. 172, 177 (1965)).

As fraud-based claims, *Walker Process* allegations are governed by Rule 9(b) of the Federal Rules of Civil Procedure. *See Medimmune, Inc. v. Genentech, Inc.*, 427 F.3d 958, 967 (Fed. Cir. 2005), *rev'd on other grounds*, *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118 (2007). Thus, Peerless is required to plead, with particularity, NT's alleged fraud on the patent office.

NT argues that Peerless's counterclaims fall short of alleging fraud. NT asserts that Peerless's pleadings merely allege that prior art existed that was inconsistent with NT's representations in the '708 Patent application and that these facts would be understood by a person with ordinary skill in the art. Peerless's pleadings, however, allege more than NT admits. First, Peerless alleges not only that a person of ordinary skill in the art would have understood the existence and relevance of the prior art but that a person of ordinary skill in the art, "such as Gavillet" [General Counsel for NT], would have had such an understanding. Thus, Peerless has alleged that NT made false statements to the Patent Office and, crucially to the *Walker Process* claim, has alleged that NT knew them to be false. Peerless's allegation that "[NT] obtained its patent wrongfully and with an intent to deceive the U.S. Patent and Trademark Office, causing the '708 Patent to issue with claims covering known unpatentable subject matter," also makes clear that Peerless is alleging fraud. Peerless has specifically alleged what information NT

6

withheld from the Patent Office and has alleged that NT withheld the information with intent to deceive. Peerless has, thus, met the pleading requirements of Rule 9(b).

For the reasons stated above, NT's motion to dismiss Peerless's federal antitrust counterclaims must be denied. NT admits that Peerless's claim under the Illinois Antitrust Act survives or fails based on the federal antitrust claims. Therefore, that counterclaim remains as well.

*Disparagement Counterclaims*

Peerless alleges that NT made false statements to Globalcom, Inc., a potential customer of Peerless, causing Globalcom to refrain from doing business with Peerless. Peerless claims that this conduct violated the Lanham Act and constitutes both tortious interference with prospective business relations and commercial disparagement, in violation of Illinois law.

Turning to Peerless's Lanham Act counterclaim, Section 43(a) of the Lanham Act provides, in part, that:

> Any person who, on or in connection with any goods or services, . . . uses in commerce any word . . . false or misleading description of fact, or false or misleading representation of fact, which . . . (B) *in commercial advertising or promotion*, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act. (emphasis added.)

15 U.S.C. § 1125(a)(1)(B). NT first argues that Peerless fails to state a claim under the Lanham Act because Peerless fails to sufficiently allege any statements that constitute commercial advertisement or promotion. Rather, the communication at issue was a single conversation between NT employees and individuals at Globalcom.

7

The Seventh Circuit has held that the phrase "commercial advertising or promotion," as used in Section 43(a) of the Lanham Act, is not synonymous with all commercial speech. *First Health Group Corp. v. BCE Emergis Corp.*, 269 F.3d 800, 803-04 (7th Cir. 2001) (*First Health*). Rather, the court noted that "[a]dvertising is a form of promotion to anonymous recipients, as distinguished from face-to-face communication. . . . [A] person-to-person pitch by an account executive is not [advertising]." *First Health*, 269 F.3d at 803-04; *see also Chicago Consulting Actuaries, LLC v. Scrol*, 2005 WL 819555 (N.D. Ill. 2005) (face-to-face meetings and personal sales calls did not qualify as commercial promotion under Section 43(a) of the Lanham Act); *ISI Intern., Inc. v. Borden Ladner Gervais LLP*, 316 F.3d 731, 733 (7th Cir. 2003) (letters sent to customers are not "commercial advertising or promotion" and, thus, do not fall within the scope of Section 43(a) of the Lanham Act). Cases cited by Peerless to the contrary, such as *Seven-Up v. Coca-Cola Co.*, 86 F.3d 1379 (5th Cir. 1996), are in direct conflict with Seventh Circuit precedent. *See First Health*, 269 F.3d at 803 (specifically rejecting the multi-factor approach used by other courts for determining the scope of § 43(a)). Therefore, NT cannot be held liable under Section 43(a) of the Lanham Act for face-to-face statements made at the single meeting alleged in Peerless's counterclaim. Because the alleged statements cannot support a claim under the Lanham Act, it is unnecessary to address NT's second argument that Peerless's allegations fail to meet the heightened pleading requirements of Rule 9(b).

NT next argues that Peerless's common-law commercial disparagement claim should be dismissed because it is based on the same underlying conduct as the Lanham Act claim. NT argues that common-law claims are subject to the same analysis as claims brought under the Illinois Uniform Deceptive Trade Practices Act (UDTPA) and that claims brought under the

8

UDTPA "are to be resolved according to principles set forth under the Lanham Act." *Spex, Inc. v. Joy of Spex, Inc.*, 847, F.Supp. 567, 579 (N.D. Ill. 1994).

To state a claim for commercial disparagement, a plaintiff must allege that the defendant made false and demeaning statements regarding the quality of another's goods and services. *Appraisers Coalition v. Appraisal Institute*, 845 F.Supp. 592, 610 (N.D. Ill. 1994). Unlike a claim under the Lanham Act, the offending statement need not have been made in a commercial advertising or promotion. NT's efforts to graft the Lanham Act standards onto the state law tort are not persuasive. *See Garland Co. Inc. v. Ecology Roof Systems Corp.*, 895 F.Supp. 274, 278 (D.Kan 1995) (noting that "single, private correspondence," while not covered under the Lanham Act, could still support liability under various state tort laws).

NT also argues that the alleged statements regarding the '708 Patent cannot support a claim for commercial disparagement because claims that there is an infringement suit pending against a party or that the party does not have license or authorization to use a patented system do not constitute disparagement. Peerless has alleged that NT "made false representations of fact concerning the lawsuit, the viability of [NT's] claimed patent, and the effect on [Peerless's] business. Peerless alleges further that NT[1] was going to "use this pending litigation to 'go hard after Peerless.'" The latter of these two statement, essentially that NT would pursue legal action against Peerless, cannot be commercial disparagement because it is not false – NT has brought suit against Peerless. The former statement, concerning the validity of NT's patent, also cannot support an allegation of commercial disparagement. To say that a good or service infringes on a

---

[1] Peerless's Counterclaim appears to misstate the wrong party when it claims that "Peerless Network [rather than NT] was going to use this pending litigation to 'go hard after Peerless' or words to that effect."

patent is not to claim that it is lacking in quality. *See Conditioned Ocular Enhancement, Inc. v. Bonaventura*, 458 F.Supp.2d 704, 710 (N.D. Ill. 2006) (statements claiming that the defendant lacked license and authorization to use patented system and that an infringement suit was pending did not qualify as disparaging statements regarding the quality of the defendant's business). Thus, Peerless's claim for commercial disparagement must be dismissed.

NT argues that Peerless's counterclaim for tortious interference with prospective business relations must be dismissed because Peerless has not alleged that NT acted with malice, which is necessary to overcome the competitor's privilege. Under Illinois law, competitors may be shielded from claims of tortious interference by a competitor's privilege. *See Cromeens, Holloman, Sibert, Inc v. AB Volvo*, 349 F.3d 376, 398-99 (7th Cir. 2003) (*Cromeens*). "The privilege to engage in business and to compete allows one to divert business from one's competitors generally as well as from one's particular competitors provided one's intent is, at least in part, to further one's business and is not solely motivated by spite or ill will." *Cromeens*, 349 F.3d at 398 (quoting *Soderlund Bros., Inc. v. Carrier Corp.*, 278 Ill.App.3d 606 (1995) (*Soderlund*)). Illinois courts have held that the competitor's privilege applies in the following circumstances:

> One who intentionally causes a third person not to enter into a prospective contractual relation with another does not interfere improperly with the other's relation if (1) the relation concerns a matter involved in the competition between the actor and the other, (2) the actor does not employ wrongful means, (3) his action does not create or continue in an unlawful restraint of trade, and (4) his purpose is at least in part to advance his interest in competing with the other.

*Soderlund*, 278 Ill.App.3d at 616 (citing Restatement (Second) of Torts § 768, at 39 (1979)).

Peerless argues that the competitor's privilege is an affirmative defense, which it is not

10

required to anticipate and disprove in its pleadings. However, when "the existence of a privilege in favor of the defendant is apparent on the face of a claim for tortious interference with prospective economic advantage, it is the plaintiff's burden to plead and prove that the defendant's conduct was unjustified or malicious." *Storm & Associates, Ltd. v. Cuculich*, 298 Ill. App.3d 1040, 1052 (Ill.App. 1 Dist.1998).

The existence of the competitor's privilege is not apparent on the face of the claim. As Peerless points out, allegations of anticompetitive conduct defeat the privilege, *see JamSports and Entertainment, LLC v. Paradama Productions, Inc.*, 336 F.Supp.2d 824, 852 (N.D. Ill. 2004), as do allegations of fraud, deceit, intimidation and deliberate disparagement. *Soderlund*, 278 Ill.App.3d at 616. Here, Peerless has alleged anticompetitive conduct and fraud. Thus, NT's motion to dismiss Peerless's claim for tortious interference with prospective business relations is denied.

### *Bifurcation under Rule 42(b)*

Failing dismissal of the non-patent counts of Peerless's counterclaim, NT seeks to bifurcate those counts and proceed first with the patent-related counts only. Federal Rule of Civil Procedure 42(b) provides: "For convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims." Fed. R. Civ. P. 42(b). Bifurcation at this point would only delay the ultimate resolution of the case. Therefore, NT's request to bifurcate is denied.

## CONCLUSION

For the foregoing reasons, Counter-Defendant NT's motion to dismiss is granted in part and denied in part. NT's motion to dismiss Counts VIII and IX of the Counterclaim is granted. NT's motion to dismiss Counts IV, V, VI and VII is denied.

Dated: December 4, 2005

JOHN W. DARRAH
United States District Court Judge