# Exhibit 2

```
               IN THE UNITED STATES DISTRICT COURT
             FOR THE NORTHERN DISTRICT OF ILLINOIS
                         EASTERN DIVISION


   NEUTRAL TANDEM, INC.,              )
                                      )
                    Plaintiff,        )
                                      )
                                      )
   -vs-                               ) Case No. 08 C 3402
                                      )
                                      ) Chicago, Illinois
   PEERLESS NETWORK, LLC,             ) April 27, 2010
   PEERLESS NETWORK OF ILLINOIS,      ) 9:00 o'clock a.m.
   LLC, and JOHN BARNICLE,            )
                                      )
                    Defendants.       )


                   TRANSCRIPT OF PROCEEDINGS
             BEFORE THE HONORABLE JOHN W. DARRAH

   APPEARANCES:

   For the Plaintiff:       JENNER & BLOCK LLP
                            BY:  MR. JOHN R. HARRINGTON
                                 MR. DANIEL JOEL SCHWARTZ
                            330 North Wabash Avenue
                            Chicago, Illinois, 60611

   For the Defendants:      KELLEY DRYE & WARREN
                            BY:  MR. HENRY T. KELLY
                            333 West Wacker Drive
                            Suite 2600
                            Chicago, Illinois 60606




                        Mary M. Hacker
                    Official Court Reporter
                   United States District Court
              219 South Dearborn Street, Suite 1212
                     Chicago, Illinois  60604
                     Telephone:  (312) 435-5564
```

1        THE CLERK:  08 C 3402, Neutral Tandem versus
2   Peerless Network.
3        MR. KELLY:  Good morning, your Honor.  Hank Kelly
4   on behalf of the defendants, Peerless Network and John
5   Barnicle.
6        THE COURT:  Good morning, Mr. Kelly.
7        MR. HARRINGTON:  Good morning, your Honor.  John
8   Harrington on behalf of Neutral Tandem.
9        THE COURT:  Good morning, Mr. Harrington.
10       MR. SCHWARTZ:  Also on behalf of Neutral Tandem,
11  Dan Schwartz.
12       THE COURT:  Good morning, Mr. Schwartz.
13       This matter comes on this morning on your motion,
14  Mr. Kelly, on behalf of the defendant counter-plaintiff to
15  stay the proceedings based on the reexamination proceedings
16  that are soon to be pending before the Patent Office -- or
17  are pending before the Patent Office.
18       The plaintiff counter-defendant has filed an
19  objection with supporting material, and the objections are
20  essentially four in number.
21       First, that the local rules require the dates to be
22  -- provided in the local rules to be followed absent
23  exceptional circumstances.  I find that these are exceptional
24  circumstances.
25       Secondly, that the defendant -- that Peerless

1   waited more than 18 months after the case was filed to
2   approach the Patent Office. And, frankly, I don't see that
3   as any great significance. I know discovery was ongoing, and
4   it's fair to conclude that it was material that was produced
5   in discovery that may have prompted you to make that
6   application.
7           Third, though, and of most concern to me, is
8   Neutral Tandem's assertion that a reexamination could take
9   from six to eight years, and that's really the nub of this.
10          What do you say to that, Mr. Kelly?
11          MR. KELLY: Your Honor, first of all, that's not
12  going to happen. In this particular instance the Patent
13  Office has already not only issued the order to re-examine,
14  but also has rejected all of the claims.
15          Under the Patent Office's rules, your Honor, the
16  Patent Office is required by law to prosecute the
17  reexamination with special dispatch in light of the pending
18  case.
19          So, your Honor -- the statistics, your Honor,
20  actually, that are reported in several of the Seventh Circuit
21  and Federal Circuit court decisions are that the
22  reexamination process will take generally between one and
23  three years, no more than three years.
24          MR. HARRINGTON: Your Honor, may I respond?
25          THE COURT: Sure.

1        MR. HARRINGTON:  If I could direct your Honor to
2   Exhibit 1 to our response, these are the Patent Office's own
3   statistics; they are recent.
4        The fact that this matter is in litigation, your
5   Honor, is entirely common to inter partes reexamination
6   request.  As you can see, 70 percent of the requests that are
7   made for inter partes reexamination are for cases in
8   litigation.
9        Even with that, you can see that the overall
10  average pendency simply to certificate issue date, your Honor
11  -- and that is far from the final step in the reexamination
12  process -- is 36.5 months.  That then follows with internal
13  appeals within the Patent Office, then appeals to the Federal
14  Circuit before any of this estoppel that's been discussed
15  attaches.
16       So three years is the average just to get through
17  the certificate process in the Patent Office.
18       THE COURT:  I'm concerned about that, frankly, Mr.
19  Kelly.
20       MR. KELLY:  Well, your Honor, first of all, the
21  certificate would be conclusive as to Peerless Network.  And
22  so that three-year period, once that certificate gets issued,
23  I mean, it becomes final as to Peerless Network.
24       THE COURT:  And that's, of course, the other side
25  of the coin.  On one side I'm really reluctant to grant a

1  stay, particularly when the reason for the stay is not within
2  my control.  We would have to be waiting for some
3  administrative agency, with all due respect to the Patent and
4  Trademark Office, to make a decision.
5          But secondly, on the other side of that coin is
6  that we could litigate this to our hearts' content in here
7  only to find something that's going to trump whatever comes
8  out --
9          MR. HARRINGTON:  That's not going to happen, your
10 Honor.  The reason is, we have a trial date in September of
11 this year, your Honor.
12         One, we have petitioned to suspend the PTO
13 proceeding pending the outcome of this case --
14         THE COURT:  You're asking me to enjoin the PTO?
15         MR. HARRINGTON:  No.  We're asking the PTO itself
16 to suspend pending the resolution of this case.  We think
17 that's a very well-founded request --
18         THE COURT:  Do they have a copy of my last order
19 regarding the permanent injunction?
20         MR. KELLY:  Yes, your Honor.
21         MR. HARRINGTON:  I believe they do.
22         THE COURT:  Will they consider that?
23         MR. HARRINGTON:  I don't know, your Honor.  I
24 believe it will be before them.  I don't know --
25         MR. SCHWARTZ:  I --

1        MR. KELLY:  Your Honor, there's been one case -- of
2   all the petitions for reexamination, there's been one case
3   where the Patent Office has stayed reexamination.  It was a
4   Sony case a couple years ago.  It doesn't apply in this --
5        THE COURT:  When will we get a ruling on that?
6        MR. HARRINGTON:  Well, here's the reason, your
7   Honor:  Respectfully --
8        THE COURT:  When would you expect a ruling --
9        MR. HARRINGTON:  Oh, when would we expect a ruling
10  on that?
11       THE COURT:  Right.
12       MR. HARRINGTON:  I don't believe there's a
13  statutory deadline for the --
14       THE COURT:  Has that been filed?
15       MR. HARRINGTON:  That was filed a few weeks ago?
16       MR. SCHWARTZ:  Yes, a couple weeks ago.
17       Typically, your Honor, we would anticipate it --
18  based on the due dates in the Patent Office, we would
19  anticipate the response coming sometime within the next month
20  because of the due dates, sometime in mid May.
21       THE COURT:  You would expect the Patent Office to
22  make a decision regarding staying their own proceedings
23  because of the pendency of this case sometime within the next
24  30 days?
25       MR. SCHWARTZ:  Right.

1                And there are -- one of the issues here, as
2     Mr. Harrington was alluding to, is kind of a race to the
3     Federal Circuit.  And that -- we're in the race.  We are very
4     close to completion in this forum, and it's starting over in
5     the other forum.
6                With respect to the finality of the PTO decision,
7     that doesn't happen until you get to the Federal Circuit and
8     the Federal Circuit weighs in.
9                MR. HARRINGTON:  In fact, your Honor, the
10    resolution of this case will, by operation of statute, estop
11    the PTO.  We're not asking you to enjoin the PTO, but by
12    federal statute, once this case is over, the PTO will be
13    estopped from continuing further proceedings.
14               THE COURT:  All right.  When I said I don't care
15    who argues, you can't argue with each other and then give
16    Mr. Harrington the third bite.
17               MR. HARRINGTON:  Sorry about that, your Honor.
18               THE COURT:  It's very effective.
19               MR. KELLY:  Your Honor --
20               THE COURT:  I mean Mr. Kelly.  I'm sorry.
21               MR. KELLY:  That's okay.
22               The conclusion of this case, also the finality of
23    this case, also doesn't occur until after all appeals are
24    exhausted.  So this Court could finish a ruling on the jury
25    trial, it could go up on appeal to the Federal Circuit.

1   While that's up on appeal to the Federal Circuit, the Patent
2   Office will continue to prosecute the reexamination if the
3   Patent Office has not yet issued a ruling.
4           And so the finality of this case and the finality
5   of the Patent Office are both at the same time, which -- or
6   not -- at the same event, which is the final conclusion of
7   the Federal Circuit ruling.
8           THE COURT:  If the Patent Office ultimately
9   declares the patent is invalid for want of patentability and
10  a jury awards the plaintiffs here a verdict, what trumps
11  what?
12          MR. KELLY:  The Patent Office invalidity finding
13  trumps any jury award, your Honor.
14          MR. HARRINGTON:  I believe that's an inaccurate
15  statement of the law, your Honor.
16          The trump card here, your Honor, is the Federal
17  Circuit.  The jury verdict from this case I think is --
18          THE COURT:  Let's assume that both are upheld.
19          MR. HARRINGTON:  Both won't be upheld, your Honor.
20          THE COURT:  Let's assume that the Federal Circuit
21  finds the Patent Office action was correct, and let's further
22  assume that the Federal Circuit finds there were no errors
23  committed in the jury trial.  Then what happens?
24          MR. KELLY:  The Patent Office ruling on invalidity
25  would trump the jury trial, and if it's up on appeal to the

1  Federal Circuit, the Federal Circuit would vacate the jury
2  verdict.
3           MR. HARRINGTON: The estoppel works both ways, your
4  Honor. Either way it works from the Federal Circuit. The
5  question --
6           THE COURT: I understand that part. That part I
7  have -- appellate procedure I have a fair grasp of.
8           The question is: If we conduct an error-free jury
9  trial, or at least error-free for purposes of reversal, and
10 the jury finds in favor of the plaintiffs here, and the
11 Patent Office in the meantime declares the patent invalid for
12 any reason, and the Federal Circuit finds that that action
13 was correct, we have two inconsistent results. Which
14 prevails?
15          MR. HARRINGTON: There's a practical impossibility
16 there, your Honor, and here's why: There's even an interim
17 step within the Patent Office before you get to the Federal
18 Circuit. There is a -- I don't know if it's called the Board
19 of Patent --
20          THE COURT: Let's assume we exhaust all the
21 administrative procedures and it's now in the Federal
22 Circuit.
23          MR. KELLY: I'll let the plaintiffs answer that,
24 because I think they will honestly -- they will answer
25 honestly that the Patent Office trumps any proceeding here.

1      MR. SCHWARTZ:  As I said before, your Honor, it's a
2  --
3      THE COURT:  At some point in time we might have to
4  brief this, and I'm going to --
5      MR. HARRINGTON:  Yes, your Honor.
6      THE COURT:  -- get this transcript out and read it
7  back to you all, particularly the losing party.
8      It would seem to me -- Mr. Kelly is pretty emphatic
9  that the Patent Office -- all other things being equal, you
10 have two otherwise valid and final rulings, that if those are
11 inconsistent, that the Patent Office ruling trumps a jury
12 verdict out of a Federal District court.
13     MR. HARRINGTON:  And our view, your Honor, I
14 believe, is that neither --
15     THE COURT:  You can say yes or no to that.
16     MR. HARRINGTON:  No, your Honor, because of --
17     THE COURT:  Okay.
18     MR. HARRINGTON:  Well, because of the appeal.  I
19 want to make sure I don't --
20     THE COURT:  My hypothetical factors in all appeal
21 processes, exhausted -- both are found to be proper,
22 error-free, at least for purposes of reversal.
23     MR. SCHWARTZ:  Your Honor, could I --
24     THE COURT:  It's much more simple than --
25     MR. HARRINGTON:  I think it would be whichever

1  Federal Circuit decision came first, actually.
2          THE COURT:  So if the Federal Circuit heard an
3  appeal from a trial here with a verdict in favor of the
4  plaintiff and affirmed that verdict, and then the Patent
5  Office presented to the Federal Circuit a declaration of
6  invalidity that was ripe for determination by the Federal
7  Circuit, and the Federal Circuit found that the determination
8  of invalidity was proper, the jury trial would stand?
9          MR. HARRINGTON:  I believe that --
10         THE COURT:  That's easy to answer yes or no as
11 well.
12         MR. HARRINGTON:  I don't believe that hypothetical
13 can exist, your Honor.  That's the problem.  Once the Federal
14 Circuit affirms the jury verdict, the PTO process stops by
15 operation of law.
16         MR. KELLY:  That's true, but it's just as likely
17 that the Federal Circuit will rule on the validity of the
18 Patent Office decision as, you know -- that ruling would
19 happen first before a ruling on any appeal of the jury trial.
20         MR. HARRINGTON:  And that's what we're saying is
21 unlikely, Judge.
22         THE COURT:  Hold it, folks.
23         So ultimately the question is, who would be in a
24 better position to determine the validity of a patent, the
25 Patent Office, an agency with congregationally recognized

1  expertise, or a civil jury?
2      MR. HARRINGTON: That's -- I don't agree with that,
3  your Honor. And the reason is, ultimately the patent -- the
4  patent will be determined by the Federal Circuit, which of
5  course has the expertise either way.
6      THE COURT: Wait a minute. You told me that if the
7  jury trial went to the Federal Circuit and was affirmed, that
8  the Patent Office would then be estopped?
9      MR. HARRINGTON: That's correct, your Honor.
10     THE COURT: Okay. So, therefore, the determination
11 of the patent would be made by several citizens sitting as a
12 jury in a Federal District court?
13     MR. HARRINGTON: And affirmed by the Federal
14 Circuit.
15     THE COURT: And affirmed by the Federal Circuit.
16     MR. KELLY: Your Honor, he's really mincing words.
17 You've got to be careful.
18     If the jury trial comes out and the decision is
19 reached, say, October 15th, that does not stop the process at
20 the Patent Office.
21     THE COURT: I understand all of that.
22     MR. KELLY: Okay.
23     THE COURT: I'm saying that if you have a fully
24 developed appellate review of an administrative proceeding
25 and the Federal District court proceeding and they are

1  absolutely inconsistent and repugnant, which prevails?
2              MR. KELLY:  The Patent Office decision, your Honor.
3              THE COURT:  No, he's told us the first prevails.
4              Well, it would seem to me the better person to make
5  that factual decision regarding invalidity would be the
6  Patent Office.
7              MR. HARRINGTON:  We respectfully disagree for this
8  reason, your Honor:  The delay in the Patent Office's own
9  statistics show --
10             THE COURT:  Well, let's put delay aside for a
11 moment.  We're not going focus on that yet.
12             We're talking just in the abstract about as a
13 matter of public policy, who would be better in a position to
14 construe whether a patent was invalid for unpatentability?
15 Several laypeople within the structure of a federal civil
16 jury trial in the district court, or an agency that has
17 expressed expertise in that area, being then reviewed by the
18 Federal Circuit?
19             MR. HARRINGTON:  And we don't believe you can
20 possibly divorce those issues, your Honor.  This is --
21             THE COURT:  Well, we're going to have to, according
22 to what you've just given me.
23             MR. HARRINGTON:  What we would suggest, your Honor
24 -- again, we're not really here --
25             THE COURT:  Hold it.  Here's what we're going to

1  do:  We're going to put -- you expect the Patent Office will
2  make a decision regarding -- at least we can get some
3  guidance from what they think should be done.  They will rule
4  on whether or not they are going to grant a stay within
5  30 days?
6              MR. KELLY:  We would agree with that -- that that
7  would be the timeframe by which they would rule on Neutral
8  Tandem's motion, your Honor.
9              MR. SCHWARTZ:  Again, there's no statutory or
10 regulatory guideline that says they have to.
11             THE COURT:  I understand that.
12             Okay.  We'll put this over for 45 days.  In the
13 meantime, all discovery may go forward.  I don't know what
14 else has to be done.
15             MR. KELLY:  I'm sorry, I missed the last pause of
16 your sentence, your Honor.
17             THE COURT:  We'll let all discovery go forward for
18 45 days.  I don't know what all has to be done.
19             MR. KELLY:  We're wrapping up expert discovery at
20 this time, your Honor.
21             THE COURT:  And we're going to proceed -- if this
22 case goes, we're going to go to trial on the patent issues
23 before a jury, and I'll decide the permanent injunction
24 issues, the mandatory injunctive relief.
25             MR. KELLY:  All right.  Your Honor, the 45 days,

1  the only thing I would say there is that the parties -- that
2  the motions for summary judgments by your Honor's order are
3  due at the end of May, and the 45 days -- if we come back
4  here in 45 days, it might actually be after we file motions
5  for summary judgment. We would prefer to have -- I think the
6  -- Neutral Tandem has to --
7              THE COURT: What if I granted summary judgment for
8  one party or the other?
9              MR. KELLY: It goes up on appeal, and the Patent
10 Office proceeding would still continue to go forward, and the
11 Federal Circuit might, based on its timeframe, issue a ruling
12 or not.
13             MR. HARRINGTON: Well, we don't know.
14             THE COURT: Okay. When is the motion for summary
15 judgment due?
16             MR. HARRINGTON: The end of May, I believe, Judge.
17             MR. KELLY: I believe May 29th or so.
18             MR. HARRINGTON: May 29th.
19             THE COURT: Okay.
20             MR. KELLY: So we would like to have a decision on
21 the motion to stay, you know, as far in advance of that date
22 as possible.
23             The other thing I would say is that Neutral Tandem
24 --
25             THE COURT: All right. Let's do that. I will deny

```
 1    the motion to stay.
 2              We'll proceed with the motion for summary judgment
 3    practice, and you can advise me if there's any action taken
 4    by the Patent Office that you think would be appropriate for
 5    me to consider regarding the motion -- to revisit the motion
 6    to stay.
 7              MR. KELLY:  So it's without prejudice, your Honor?
 8              THE COURT:  The motion to stay these proceedings is
 9    denied without prejudice.  And the parties are directed to
10    comply with the summary judgment rulings that are presently
11    in effect.
12              MR. KELLY:  Okay.
13              THE COURT:  -- the summary judgment that's
14    presently in effect.
15              MR. HARRINGTON:  Very well.
16              Judge, one point of clarification.  You had
17    previously issued a minute order saying no further motions
18    without leave of Court.
19              THE COURT:  That's vacated.
20              MR. HARRINGTON:  Is that vacated?
21              THE COURT:  Yes.
22              MR. HARRINGTON:  Thank you, your Honor.
23              MR. KELLY:  Thank you.
24              THE COURT:  You're welcome.
25           (Which were all the proceedings heard.)
```

1              CERTIFICATE

2      I certify that the foregoing is a correct transcript

3  from the record of proceedings in the above-entitled matter.

4

5      /s/ *Mary M. Hacker*                    *April 27, 2010*

6  _____     _____
   Mary M. Hacker                     Date
7  Official Court Reporter