UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| NEUTRAL TANDEM, INC., | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | |
| PEERLESS NETWORK, LLC; PEERLESS NETWORK OF ILLINOIS, LLC; and JOHN BARNICLE, | ) ) ) | No. 08 C 3402 |
| Defendants. | ) ) ) | Judge John W. Darrah |
| PEERLESS NETWORK, LLC; PEERLESS NETWORK OF ILLINOIS, LLC; and JOHN BARNICLE, | ) ) ) ) | |
| Counterclaim Plaintiffs, | ) ) | |
| v. | ) ) | |
| NEUTRAL TANDEM, INC., | ) ) | |
| Counterclaim Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Neutral Tandem, Inc., brought suit against Defendants – Peerless Network, Inc.; Peerless Network of Illinois, LLC; and John Barnicle (collectively, "Peerless") – alleging infringement of Neutral Tandem's U.S. Patent No. 7,123,708 ("the '708 Patent"). Peerless filed a Counterclaim, seeking, *inter alia*, a declaratory judgment that the '708 Patent is unenforceable due to inequitable conduct, patent misuse and unclean hands (Count III). Before the Court is Neutral Tandem's motion for summary judgment as to Count III of the Counterclaim.

## LEGAL STANDARD

Summary judgment is appropriate when there remains no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Cincinnati Ins. Co. v. Flanders Elec. Motor Serv., Inc.*, 40 F.3d 146, 150 (7th Cir. 1994). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (*Celotex*). Thus, although the moving party on a motion for summary judgment is responsible for demonstrating to the court why there is no genuine issue of material fact, the nonmoving party must go beyond the face of the pleadings, affidavits, depositions, answers to interrogatories, and admissions on file to demonstrate, through specific evidence, that there remains a genuine issue of material fact and show that a rational jury could return a verdict in the nonmoving party's favor. *Celotex*, 477 U.S. at 322-27; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254-56 (1986) (*Anderson*); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (*Matsushita*); *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 923 (7th Cir. 1994).

Disputed facts are material when they might affect the outcome of the suit. *First Ind. Bank v. Baker*, 957 F.2d 506, 507-08 (7th Cir. 1992). When reviewing a motion for summary judgment, a court must view all inferences to be drawn from the facts in the light most favorable to the opposing party. *Anderson*, 477 U.S. at 247-48; *Popovits v. Circuit City Stores, Inc.*, 185 F.3d 726, 731 (7th Cir. 1999). However, a metaphysical doubt will not suffice. *Matsushita*, 475 U.S. at 586. If the evidence is merely colorable or is not significantly probative or is no more than a scintilla, summary judgment may be granted. *Anderson*, 477 U.S. at 249-50.

## ANALYSIS

Peerless's inequitable conduct claim is based on Peerless's allegation that the inventor of the '708 Patent, Ronald Gavillet, had knowledge of material prior art and failed to disclose that prior art to the Patent and Trademark Office ("PTO") during the prosecution of the '708 Patent. Specifically, Peerless alleges that Gavillet failed to disclose the FCC 91-141 Transport Phase II Order ("Phase II Order"), which the Court considered in finding that the '708 Patent was vulnerable for obviousness.

To establish inequitable conduct, the party challenging the patent must show that the patent applicant "(1) either made an affirmative misrepresentation of material fact, failed to disclose material information, or submitted false material information, and (2) intended to deceive the U.S. Patent and Trademark Office." *Symantec Corp. v. Computer Associates Intern., Inc.*, 522 F.3d 1279, 1296 (Fed. Cir. 2008) (*Symantec*) (quoting *Cargill, Inc. v. Canbra Foods Ltd.*, 476 F.3d 1359, 1363 (Fed. Cir. 2007)). This showing must be made by clear and convincing evidence. *Symantec*, 522 F.3d at 1296; *Optium Corp. v. Emcore Corp.*, 603 F.3d 1313, 1319-20 (Fed. Cir. 2010) (*Optium*) ("failure to disclose material information . . . with an intent to mislead or deceive the examiner . . . must be proven by clear and convincing evidence").

"[I]nformation is material when a reasonable examiner would consider it important in deciding whether to allow the application to issue as a patent." *Star Scientific, Inc. v. R.J. Reynolds Tobacco Co.*, 537 F.3d 1357, 1367 (Fed. Cir. 2008) (*Star Scientific*) (quoting *Symantec*, 522 F.3d at 1297). However, "information is not material if it is cumulative of other information already disclosed to the PTO." *Star Scientific*, 537 F.3d at 1367.

3

The "intent" element requires "not simply intent to take the action or omission complained of, but intent to deceive or mislead the patent examiner into granting the patent." *Optium*, 603 F.3d at 1320. "In situations of nondisclosure of information rather than affirmative misrepresentation, 'clear and convincing evidence must show that the applicant made a deliberate decision to withhold a known material reference.'" *Id.* (quoting *Molins PLC v. Textron, Inc.*, 48 F.3d 1172, 1181 (Fed. Cir.1995)). "[I]ntent to deceive can not be inferred solely from the fact that information was not disclosed; there must be a factual basis for a finding of deceptive intent." *Optium*, 603 F.3d at 1321 (quoting *Hebert v. Lisle Corp.*, 99 F.3d 1109, 1116 (Fed. Cir.1996)). Finally, while intent to deceive may be shown by circumstantial evidence, "the inference [of the intent to deceive] . . . must . . . be the single most reasonable inference able to be drawn from the evidence to meet the clear and convincing standard." *Star Scientific*, 537 F.3d at 1366.

Neutral Tandem argues that Peerless can show neither failure to disclose material information nor intent to deceive. On the question of intent, Neutral Tandem notes that Peerless has no direct evidence that Gavillet intended to deceive the PTO but instead relies on circumstantial evidence. Neutral Tandem argues that Peerless cannot produce evidence establishing that Gavillet even knew of the Phase II Order, much less that Gavillet withheld the Phase II Order with the specific intent to deceive the PTO.

Peerless offers three pieces of evidence that it claims show both that Gavillet knew of the Phase II Order and that he intended to deceive the PTO by withholding it. First, Peerless cites Gavillet's deposition testimony. According to Peerless, "Mr. Gavillet specifically testified that he became aware of the FCC's 91-141 proceeding 'at some point when it was going on.'"

4

Peerless Br. 7. Noting that the 91-141 proceeding closed well before the '708 Patent was issued, Peerless concludes, "Therefore, by his own admission about his knowledge of this proceeding, Mr. Gavillet had knowledge of the FCC 91-141 proceeding prior to the filing of the non-provisional application for the '708 patent." *Id.*

This argument is flawed in that it equates awareness of the FCC 91-141 proceedings with knowledge of the Phase II Order. Neutral Tandem points out that the 91-141 proceeding lasted 11 years, during which time the FCC issued 13 orders and received over 300 comments. The deposition testimony cited by Peerless fails to demonstrate that Gavillet was at all familiar with the details of that proceeding.[1] Indeed, Gavillet testified earlier in his deposition that he did not recall hearing of an FCC order called FCC Docket 91-141 and did not recognize the Phase II

---

[1] Gavillet testified as follows:

Q: Have you ever heard of the FCC's expanded interconnection proceedings?
A: I just looked at some documents from that proceeding and I'm – as a result of that, I recall the FCC had a series of proceedings called expanded interconnection over several years.
Q: When did you first become aware of that proceeding?
A: It would have been in – well, I don't recall when it started, so at some point when it was going on, I was aware of it, but I don't recall when it started.
Q: Was it prior to the year 2000?
A: I don't recall when it started?
Q: Well, we looked at some documents here that indicate it started at least as of 1994, correct?
A: Yes.
Q: Okay. So would you have been aware of it as of 1994?
A: I don't recall.
Q: Were you aware of it when you were employed by MCI, the second time you were employed by MCI in the '90's?
A: I don't recall.

Gavillet Dep. 51:20-52:20.

Order or any of the language in it when presented with the document.[2] Thus, although Peerless has established that Gavillet had at least some awareness of the 91-141 proceedings at some point while they were going on, Gavillet's deposition testimony does not establish that he knew of the Phase II Order before the issuance of the '708 Patent.

Peerless's second piece of evidence that Gavillet withheld the Phase II Order in an attempt to deceive the PTO is a paragraph from the Phase II Order that Peerless argues is strikingly similar to language in the application for the '708 patent. This argument, also, is unpersuasive. Peerless simply recites both paragraphs and, without any analysis, claims that they are similar. As Neutral Tandem admits, both paragraphs discuss the general benefits of promoting competition in the telecommunications market. Any further specific similarities are not apparent. To argue that the similarity between the two paragraphs is clear and convincing evidence that Gavillet knew of the Phase II Order is simply not persuasive.

Finally, Peerless asserts that in August 2006, while he was General Counsel at Neutral Tandem, Gavillet filed a petition with the FCC that cites and quotes the above-referenced

---

[2]Upon being handed the Phase II Order and asked if it refreshed his recollection, Gavillet testified as follows:

    Q:    Mr. Gavillet, are you reading the entire document?
    A:    I'm looking at the document to see if I recall seeing it.
    Q:    What page have you gotten to?
    A:    Page 4.
    Q:    Does any of the language refresh your recollection so far?
    A:    I don't recall seeing the document.
    Q:    Do you recall seeing any of the language you've reviewed so far?
           [objection by counsel]
    A:    No, I don't recall seeing any of the language I reviewed so far.

Gavillet Dep. 34:16-35:6.

language from the Phase II Order. Peerless argues that this reference to the Phase II Order confirms Gavillet's knowledge of that order. However, Gavillet testified at his deposition that the petition containing the reference to the Phase II Order was prepared by outside counsel and that he could not recall having reviewed the petition. Thus, this evidence also falls short of establishing that Gavillet was aware of the Phase II Order.

Peerless has thus failed to show by clear and convincing evidence that Gavillet was aware of the Phase II Order. Gavillet's testimony was consistent throughout his deposition that he could not recall having seen the Phase II Order. Peerless's assertion to the contrary, that Gavillet knew of the Phase II Order and intentionally withheld it from the PTO with the intent to deceive, is entirely speculative. Simply put, there has been no evidence offered by Peerless that clearly and convincingly supports that assertion. That Gavillet "made a deliberate decision to withhold a known material reference," *Optium*, 603 F.3d at 1320, is not the "single most reasonable inference" *Star Scientific*, 537 F.3d at 1366, that can be drawn from the evidence presented by Peerless. Thus, Peerless has not met its burden as to intent. Because Neutral Tandem is entitled to summary judgment on this basis alone, it is unnecessary to determine whether the Phase II Order is material.

## CONCLUSION

For the foregoing reasons, Neutral Tandem's Motion for Summary Judgment on Count III of Peerless's Counterclaim is granted.

Dated: December 2, 2010

JOHN W. DARRAH
United States District Court Judge